# UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH CAROLINA

## ORANGEBURG DIVISION

| | | |
|---|---|---|
| Lymisha Ryant, Individually and as Personal Representative of the Estate of Tony Glen Tyler, | ) ) ) ) | C/A No: |
| *Plaintiff,* | ) ) | __COMPLAINT__ |
| vs. | ) ) | (42 U.S.C. § 1983) (Jury Trial Demanded) |
| Willie Bamberg, Sgt. Edward Rawls, Roy Brooks, Melanie Williams, Harrie Mintz | ) ) ) | |
| Defendants. | ) ) ) ) | |

Plaintiff named herein, complaining of Defendants herein, would respectfully show unto this Honorable Court and allege as follows:

## __JURISDICTION__

1.      This action is an action for money damages brought pursuant to 42 U.S.C.A. §§ 1983, et seq., and the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, and under the common law, the statutory law, and the Constitution of the State of South Carolina, against the Defendants.

2.      Subject matter jurisdiction is conferred upon the Court by 28 U.S.C.A. §§ 1331, 1367 (a), (b), (c), (d), and 1343, and 28 U.S.C.A. §§ 2201 and 2202.

## PARTIES

3.      The Plaintiff, Lymisha Ryant, is the duly appointed Personal Representative of the Estate of Tony Glen Tyler (Decedent), having been so appointed by the Orangeburg County Probate Court on the 18th day of August, 2014, under Case No. 2014-ES-38-00005.

4.      This suit is filed on behalf of the heirs of Tony Glen Tyler.

5.      The Orangeburg County Detention Center (hereinafter "OCDC") is owned and operated by Orangeburg County.  OCDC and/or Orangeburg County are governmental agencies and/or political subdivisions of the State of South Carolina located in Orangeburg County, South Carolina. At all times mentioned, OCDC carried on its business by and through its agents, servants and/or employees.

6.      At all times mentioned in this Complaint, the Defendants Jail Administrator Willie Bamberg, Sgt. Edward Rawls, Roy Brooks, Melanie Williams, and Harrie Mintz were administrators, supervisors, officers and/or employees of OCDC.   At all relevant times hereinafter mentioned, these Defendants were acting individually as employees and/or administrators/supervisors of OCDC.  For purposes of claims asserted under 42 U.S.C. § 1983, these Defendants are being sued in their individual capacity, under the color of state law.  Upon information and belief, these Defendants had direct contact with the Decedent, had direct knowledge of his medical condition (including his need for medical care), and/or supervised others who had direct contact with him.

7.      During the time period in question, the Plaintiff/Decedent's Constitutional rights were well established and well known to each of the Defendants listed above, including and not limited to, the Decedent's right to appropriate medical care; to be free from cruel and unusual punishment; and to due process. Additionally, the Defendants (Bamberg and Sgt. Rawls) had

actual and/or constructive knowledge that their subordinates (Defendants Brooks, Williams, and Mintz) were engaging in conduct that posed a pervasive and unreasonable risk of Constitutional injury to the Decedent. Further, the response of these Defendants to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the offenses by them as alleged herein; and there was a causal link between their actions and/or inactions and the Constitutional injuries suffered by the Plaintiff.

8.     Upon information and belief, (during the time period set out below) the Defendants Brooks, Williams, and Mintz were security officers who had direct contact with the Decedent and were well aware of his serious medical condition (especially Mintz who was classified as a "medication officer").  These Defendants had the obligation and the opportunity to secure the appropriate medical care and treatment for the decedent, to refrain from utilizing improper punishment and to utilize due process.  These Defendants were consciously and deliberately indifferent to the emergent medical needs of the decedent by consciously failing to secure the appropriate medical care.   A more detailed description of the Defendants' actions and/or inactions are set out below.

9.     The allegations set forth in this Complaint occurred in Orangeburg County; therefore, venue is proper in this District.

## FACTS

10.     The acts and occurrences which give rise to this action occurred while the Decedent was in the care and custody of the Defendants while incarcerated at OCDC prior to his death on August 11, 2012.

11.     Upon information and belief, OCDC maintained a staffing level of security officers that was woefully inadequate to maintain the safety and security of the inmates located

3

within the detention center. Further, there was no medical staff on site at OCDC from 10pm-7am on the weekdays and 5pm-7am on weekends (the night shifts). This information was well known to the Defendant Jail Administrator Willie Bamberg. Further, despite there being no medical on site (after 10pm on the weekdays, and 5pm on the weekends if at all), Defendant Bamberg consciously and deliberately failed to have his security staff properly trained to recognize detainees with serious medical conditions. Further, he failed to ensure that the security staff was trained and certified to administer CPR and/or other basic life saving measures. Plaintiff is informed and believes that even though the medical staff informed Defendant Bamberg that the correctional officers were not properly trained (as indicated above) the proper training was never implemented.

12.     Further, during the time period in question, OCDC maintained a 24-hour lockdown unit (Old Med/Gate 10 and Old Max/Gate 8) that OCDC policy and procedure required to be properly monitored by 1-2 officers, 24 hours a day. During the time period in question, detainees were placed into this 24-hour lockdown unit for disciplinary reasons, suicide watch and/or close medical observation. Detainees located in these cells are locked down (24) hours a day, and have all medications and food personally delivered to their cell throughout the day and night.

13.     During the time period in question, it was improper to require detainees who required medical attention to be housed in the 24-hour lockdown unit. According to OCDC policy and procedure, they were to be housed in a medical cell—so that they could be appropriately monitored by medical personnel. This policy was well known to Defendants Bamberg, Rawls, Brooks, Williams and Mintz. However, if a detainee was placed on 24 hour

lock-down with chronic medical conditions, OCDC policy and procedure required that that detainee be closely monitored on a regular basis in case of a medical emergency.

14.     Further, during the time period in question there were no officers actually located in this unit for hours during the day and night as required by OCDC policy and procedure.  This information was well known to all Defendants (especially Jail Administrator Bamberg and Sgt. Rawls) during the time period in question.

15.     Based upon OCDC policy and procedure and the Minimum Standards for Local Detention Facilities, the Defendants were to conduct regular cell observations every 30 minutes with regard to all detainees located in the 24-hour lock-down area.   This was especially appropriate regarding those detainees with chronic medical conditions. This policy was well known to Defendants Rawls, Brooks, Williams and Mintz.  During the time period in question, regular cell checks as required every 30 minutes (or even every hour) were rarely, if ever, conducted.

16.     During the time period in question, the security officers were responsible for administering prescription medications to the inmates rather than the nursing staff. These "medication officers", to include Defendant Harrie Mintz, were responsible for notifying the nurse when an inmate's medication was running low (approximately 7 pills left) in order for the nurse to order a refill prior to the medication running out.

17.     On April 27, 2012, the Decedent was booked into OCDC.  The Decedent suffered from a variety of chronic medical and mental health illnesses to include Epilepsy, Hypertension, and Schizophrenia.   With regard to these illnesses, he had been prescribed the following prescription medications: Benzotropine (used to reduce the side effects of anti-psychotic medications), Propranolol (to treat hypertension), Diltiazem 24 hour (to treat hypertension),

Carbamazepine (to treat seizures), and Seroquel (to treat schizophrenia). The Decedent was initially classified and housed in general population, but was later transferred to the 24-hour lock down unit in Old Med (Gate 10, cell A-2). Based upon the above mentioned information, it was highly improper to transfer the Decedent from general population to Old Med based on his chronic medical conditions. The Plaintiff is informed and believes that the Defendant Bamberg knew of and in fact approved this transfer.

18.     During this time period, the Decedent was supposed to be receiving his prescription medications as ordered by the physician. This medication included Diltiazem which the Decedent was required to take for Hypertension. Based on the OCDC medical records, this medication was to be given and/or administered to the Decedent every night by the medication officers including the Defendant Officer Mintz. Additionally, the MAR includes this prescription medication ran out on August 6, 2012 and further, that the Decedent did not receive this ordered and prescribed medication from August 6, 2012 through August 10, 2012. During this time period, the Defendant Mintz was consciously aware that the Decedent had not received his Hypertension medication for five (5) nights. A--- with this knowledge, the Defendant Mintz consciously failed to contact a physician or ensure that the Decedent was transferred to the nearest hospital.

19.     On the night of August 10, 2012, Defendants Rawls, Brooks, Williams, and Mintz were all aware that the night shift was understaffed. Sgt. Rawls was the only supervisor on shift in charge of all security operations for the entire detention center. At this time, Defendant Brooks was assigned to both the Decedent's area (Old Med/Gate 10) and the intake area. As the Supervising officer, Sgt. Rawls had the duty and responsibility to monitor the correctional officers on his shift to ensure that they were conducting proper and timely checks on the inmates

6

as required by OCDC policy. Sgt. Rawls consciously and deliberately failed to monitor Old Med/Gate 10 to ensure that Officer Brooks was performing proper thirty (30) minute cell checks on the Decedent. Similarly, Officer Brooks consciously and deliberately failed to monitor the Decedent every thirty (30) minutes as required by OCDC policy.

20.    Upon information and belief, at approximately 5:55am, while passing out the breakfast trays he noticed that the Decedent was unresponsive. However, instead of ensuring the Decedent was alive and/or contacting his Supervisor (Defendant Sgt. Rawls) Officer Brooks consciously and deliberately continued to pass out breakfast trays to the rest of the detainees in Old Med-Gate 10. Thereafter, when Ofc. Brooks returned to the Decedent's cell, he again saw that the Decedent was unresponsive, and upon entering the Decedent's cell, that he was pulseless. Instead of immediately starting lifesaving procedures (including CPR), calling his Supervisor (Sgt. Rawls) and/or EMS as required by OCDC policy and procedure, Officer Brooks asked Control 1 Officer (Defendant Melanie Williams) to check the Decedent. Officer Williams then waited for Officer Brooks to take her place in Control 1 before she could go check the Decedent alone in Old Med-gate 10. After arriving at the cell, Officer Williams confirmed the Decedent was unresponsive. However, this Defendant also consciously failed to start lifesaving procedures (including CPR), call a physician or 911. Defendant Supervisor Rawls was finally contacted about the situation.

21.    Sgt. Rawls, as the Supervisor and Command Officer for emergency situations on this night shift, then failed to immediately call EMS when first told that the Decedent was unresponsive. Instead, Lt. Murdock (the oncoming morning shift supervisor) instructed the officers to call EMS. No resuscitative efforts were taken to revive the Decedent (to include CPR

or AED) before EMS arrived (from approximately 5:55am to 6:17). The Decedent was pronounced dead minutes after EMS arrived.

**FOR A FIRST CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(8TH AMENDMENT – CRUEL AND UNUSUAL PUNISHMENT)**
**(SURVIVAL)**

22.     Each and every allegation of fact contained in the above stated paragraphs are re-alleged herein, as if re-stated verbatim.

23.     The Defendants were acting under the color or pretense of State law, customs, practices, usage, and/or policy at all times mentioned herein as detention officers and/or supervisors of OCDC and had certain duties imposed upon them with regard to Tony Glen Tyler Additionally, during the time period in question, the Defendants were well aware of the Decedent's constitutional rights, including his right to proper medical care and to be free from cruel and unusual punishment.

24.     The Defendants were consciously and deliberately indifferent to the Decedent on while incarcerated at OCDC prior to his death that took place on August 11, 2012 in the following particulars:

    (a)     in consciously failing to provide reasonable, necessary and appropriate medical care to the Decedent when they had the opportunity and obligation to do so. Further, in failing to provide reasonable, necessary and appropriate medical care to the decedent – who had a serious medical condition which was open and obvious to those Defendants who had contact with him;

    (b)     in consciously failing to provide reasonable, necessary and appropriate medical attention to the Decedent;

8

(c)     in consciously failing to use even slight care and caution in safekeeping the Decedent;

(d)     in consciously failing to sufficiently screen, classify and/or monitor the Decedent while he was incarcerated so as to determine the severity of his medical condition and to recognize and prevent his death;

(e)     in consciously allowing gross understaffing of OCDC;

(f)     in consciously failing to monitor the Decedent;

(g)     in knowingly, deliberately and consciously denying appropriate medical care to the Decedent;

(h)     in engaging in a pattern and practice of failing to provide reasonable and necessary medical care and/or treatment to detainees in their custody including the Decedent – causing them to needlessly suffer and/or die;

(i)     in engaging in a pattern and practice of failing to provide the appropriate booking, screening and /or classification procedures regarding detainees to properly determine their medical needs-causing them to not receive the appropriate medical care, suffer needlessly and sometimes die;

(j)     in consciously failing to properly care for the Decedent, when the Defendants knew or should have known that the Decedent was in dire need of medical assistance and/or treatment;

(k)     in consciously failing to refer or transport the Decedent, to the hospital knowing he had not received his prescription hypertension medication for approximately five (5) nights;

(l)     in failing to have the proper medical examination performed to determine the Decedent's medical needs and/or mental status and provide appropriate medical care and treatment;

(m)     in consciously failing to take the appropriate steps to provide medical care and treatment to the Decedent when they had actual and constructive notice of the Decedent's medical condition (and that the Decedent's prescribed hypertension medication had run out);

(n)     in consciously failing to have the proper policy and procedures necessary to ensure that inmates are provided basic and/or appropriate medical care;

(o)     if said procedures do exist, in failing to follow same;

(p)     in consciously abandoning the Decedent when he was in desperate need for medical care;

(q)     in consciously failing to follow the mandates of OCDC's Policies and Procedures;

(r)      in consciously failing to follow the mandates of the Minimum Standards for Local Detention Facilities in South Carolina; and

(s)     in consciously failing to start and implement the appropriate life saving measures on August 11, 2012.

25.     As a direct and proximate result of the Defendants' acts of willful, malicious, conscious and deliberate indifference, jointly, severally, and in combination thereof, the Decedent suffered deprivations of his rights secured by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. Additionally, as a direct result of the above, the Decedent suffered needlessly and ultimately died.

26.     As a result, the Decedent suffered conscious pain, mental and physical suffering,

indignity, and loss of his aforementioned federal rights. The Plaintiff has suffered the loss of the life of the Decedent, loss of his love and support, mental anguish, emotions distress, undue grief, and will likely suffer from the effects of the Defendants' actions now and in the future, and Plaintiff demands ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES from the Defendants.

**FOR A SECOND CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(4TH & 8TH AMENDMENT – FAILURE TO PROVIDE MEDICAL CARE – CRUEL AND UNUSUAL PUNISHMENT)**
**(WRONGFUL DEATH)**

27.     Each and every allegation of fact contained in the above stated paragraphs are re-alleged herein, as if re-stated verbatim.

28.     The Defendants were acting under the color or pretense of South Carolina law, customs, practices, usage, or policy at all times mentioned herein, as detention officers and/or supervisors of OCDC and had certain duties imposed upon them with regard to Tony Glen Tyler. Additionally, during the time period in question, the Defendants were well aware of the Decedent's constitutional rights, including his right to be secure, to receive proper medical care and to be free from cruel and unusual punishment.

29.     The Defendants were consciously and deliberately indifferent to the Decedent and Plaintiff during the time period mentioned in the facts in the following particulars:

(a)     in consciously failing to provide reasonable, necessary and appropriate medical care to the Decedent when they had the opportunity and obligation to do so. Further, in failing to provide reasonable, necessary and appropriate medical care to the decedent – who had a serious medical condition which was open and obvious to those Defendants who had contact with him;

(b)    in consciously failing to provide reasonable, necessary and appropriate medical attention to the Decedent;

(c)    in consciously failing to use even slight care and caution in safekeeping the Decedent;

(d)    in consciously failing to sufficiently screen, classify and/or monitor the Decedent while he was incarcerated so as to determine the severity of his medical condition and to recognize and prevent his death;

(e)    in consciously allowing gross understaffing of OCDC;

(f)    in consciously failing to monitor the Decedent;

(g)    in knowingly, deliberately and consciously denying appropriate medical care to the Decedent;

(h)    in engaging in a pattern and practice of failing to provide reasonable and necessary medical care and/or treatment to detainees in their custody including the Decedent – causing them to needlessly suffer and/or die;

(i)    in engaging in a pattern and practice of failing to provide the appropriate booking, screening and /or classification procedures regarding detainees to properly determine their medical needs-causing them to not receive the appropriate medical care, suffer needlessly and sometimes die;

(j)    in consciously failing to properly care for the Decedent, when the Defendants knew or should have known that the Decedent was in dire need of medical assistance and/or treatment;

(k) in consciously failing to refer or transport the Decedent, to the hospital knowing he had not received his prescription hypertension medication for approximately five (5) nights;

(l) in failing to have the proper medical examination performed to determine the Decedent's medical needs and/or mental status and provide appropriate medical care and treatment;

(m) in consciously failing to take the appropriate steps to provide medical care and treatment to the Decedent when they had actual and constructive notice of the Decedent's medical condition (and that the Decedent's prescribed hypertension medication had run out);

(n) in consciously failing to have the proper policy and procedures necessary to ensure that inmates are provided basic and/or appropriate medical care;

(o) if said procedures do exist, in failing to follow same;

(p) in consciously abandoning the Decedent when he was in desperate need for medical care;

(q) in consciously failing to follow the mandates of OCDC's Policies and Procedures;

(r) in consciously failing to follow the mandates of the <u>Minimum Standards for Local Detention Facilities in South Carolina</u>; and

(s) in consciously failing to start and implement the appropriate life saving measures on August 11, 2012.

30. As a direct and proximate result of the Defendants' acts of willful, malicious, conscious and deliberate indifference, jointly, severally and in combination thereof, the Decedent

suffered deprivations of his rights secured by the Fourth, Eighth, and Fourteenth Amendments to the <u>United States Constitution</u>.

31.     The Defendants jointly, severally and in combination thereof, wrongfully caused the death of Tony Glen Tyler by their acts and omissions as described above.

32.     As a direct and proximate result of the omissions, willful and wanton conduct of the Defendants, the Plaintiff has been damaged and suffered as follows:

(a)     loss of financial economic support and contribution of the deceased;

(b)     extreme mental shock and suffering;

(c)     extreme wounded feelings;

(d)     tremendous grief and sorrow;

(e)     loss of friendship and companionship; and

(f)     deprivation of the use and comfort of the deceased's society, knowledge and judgment and experience.

33.     The Plaintiff is informed and believe that the Estate of Tony Glen Tyler is entitled to ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES against the Defendants, pursuant to the violation of her Federal Civil Rights 42 USC 1983 – Wrongful Death.

34.     As a result, the Decedent suffered conscious pain, suffering, indignity, and loss of his aforementioned federal rights. The Plaintiff has suffered the loss of the life of the Decedent, loss of his love and support, mental anguish, emotional distress, undue grief, and will likely suffer from the effects of the Defendants' actions now and in the future, and Plaintiff demands ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES from the Defendants.

<b><u>FOR A THIRD CAUSE OF ACTION</u></b><br>
<b><u>VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983</u></b><br>
<b>(VIOLATION OF DUE PROCESS – 14TH AMENDMENT)</b><br>
<b>(SURVIVAL)</b>

35. Each and every allegation of fact contained in the above stated paragraphs are re-alleged herein, as if re-stated verbatim.

36. The Defendants were acting under the color or pretense of South Carolina law, customs, practices, usage or policy at all times mentioned herein as detention officers and/or supervisors of OCDC and had certain duties imposed upon them with regard to Tony Glen Tyler. Additionally, during the time period in question, the Defendants were well aware of the Decedent's constitutional rights including his right to due process.

37. The Defendants' actions were consciously and deliberately indifferent to the Decedent and the Plaintiff during the time period mentioned in the facts in the following particulars:

(a) in consciously failing to provide reasonable, necessary and appropriate medical care to the Decedent when they had the opportunity and obligation to do so. Further, in failing to provide reasonable, necessary and appropriate medical care to the decedent – who had a serious medical condition which was open and obvious to those Defendants who had contact with him;

(b) in consciously failing to provide reasonable, necessary and appropriate medical attention to the Decedent;

(c) in consciously failing to use even slight care and caution in safekeeping the Decedent;

(d) in consciously failing to sufficiently screen, classify and/or monitor the Decedent while he was incarcerated so as to determine the severity of his medical condition and to recognize and prevent his death;

(e) in consciously allowing gross understaffing of OCDC;

15

(f)    in consciously failing to monitor the Decedent;

(g)    in knowingly, deliberately and consciously denying appropriate medical care to the Decedent;

(h)    in engaging in a pattern and practice of failing to provide reasonable and necessary medical care and/or treatment to detainees in their custody including the Decedent – causing them to needlessly suffer and/or die;

(i)    in engaging in a pattern and practice of failing to provide the appropriate booking, screening and /or classification procedures regarding detainees to properly determine their medical needs-causing them to not receive the appropriate medical care, suffer needlessly and sometimes die;

(j)    in consciously failing to properly care for the Decedent, when the Defendants knew or should have known that the Decedent was in dire need of medical assistance and/or treatment;

(k)    in consciously failing to refer or transport the Decedent, to the hospital knowing he had not received his prescription hypertension medication for approximately five (5) nights;

(l)    in failing to have the proper medical examination performed to determine the Decedent's medical needs and/or mental status and provide appropriate medical care and treatment;

(m)    in consciously failing to take the appropriate steps to provide medical care and treatment to the Decedent when they had actual and constructive notice of the Decedent's medical condition (and that the Decedent's prescribed hypertension medication had run out);

16

(n)     in consciously failing to have the proper policy and procedures necessary to ensure that inmates are provided basic and/or appropriate medical care;

(o)     if said procedures do exist, in failing to follow same;

(p)     in consciously abandoning the Decedent when he was in desperate need for medical care;

(q)     in consciously failing to follow the mandates of OCDC's Policies and Procedures;

(r)      in consciously failing to follow the mandates of the <u>Minimum Standards for Local Detention Facilities in South Carolina</u>; and

(s)     in consciously failing to start and implement the appropriate life saving measures on August 11, 2012.

38.     As a direct and proximate result of the Defendants' acts of willful, malicious, conscious and deliberate indifference, jointly and severally and in combination thereof, the Decedent suffered deprivations of his rights secured by the Fourth, Eighth and Fourteenth Amendments to the <u>United States Constitution</u>.

39.     As a result, the Decedent suffered conscious pain, suffering, indignity, and loss of his life. The Plaintiff, who has suffered the loss of the life of the Decedent, loss of support, mental anguish, loss of quality of life, emotional distress, and undue grief will likely suffer from the effects of the Defendants' actions now and in the future, demand damages from the Defendants, jointly and severally for ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES.

**FOR A FOURTH CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(VIOLATION OF DUE PROCESS – 14TH AMENDMENT)**
**(WRONGFUL DEATH)**

40.     Each and every allegation of fact contained in the above stated paragraphs are re-alleged herein, as if re-stated verbatim.

41.     The Defendants were acting under the color or pretense of South Carolina law, customs, practices, usage or policy at all times mentioned herein as detention officers and/or supervisors of OCDC and had certain duties imposed upon them with regard to Tony Glen Tyler. Additionally, during the time period in question, the Defendants were well aware of the Decedent's constitutional rights including his right to due process.

42.     The Defendants' actions were consciously and deliberately indifferent to the Decedent during the time period mentioned in the facts in the following particulars:

(a)     in consciously failing to provide reasonable, necessary and appropriate medical care to the Decedent when they had the opportunity and obligation to do so. Further, in failing to provide reasonable, necessary and appropriate medical care to the decedent – who had a serious medical condition which was open and obvious to those Defendants who had contact with him;

(b)     in consciously failing to provide reasonable, necessary and appropriate medical attention to the Decedent;

(c)     in consciously failing to use even slight care and caution in safekeeping the Decedent;

(d)     in consciously failing to sufficiently screen, classify and/or monitor the Decedent while he was incarcerated so as to determine the severity of his medical condition and to recognize and prevent his death;

(e)     in consciously allowing gross understaffing of OCDC;

(f)     in consciously failing to monitor the Decedent;

18

(g)     in knowingly, deliberately and consciously denying appropriate medical care to the Decedent;

(h)     in engaging in a pattern and practice of failing to provide reasonable and necessary medical care and/or treatment to detainees in their custody including the Decedent – causing them to needlessly suffer and/or die;

(i)     in engaging in a pattern and practice of failing to provide the appropriate booking, screening and /or classification procedures regarding detainees to properly determine their medical needs-causing them to not receive the appropriate medical care, suffer needlessly and sometimes die;

(j)     in consciously failing to properly care for the Decedent, when the Defendants knew or should have known that the Decedent was in dire need of medical assistance and/or treatment;

(k)     in consciously failing to refer or transport the Decedent, to the hospital knowing he had not received his prescription hypertension medication for approximately five (5) nights;

(l)     in failing to have the proper medical examination performed to determine the Decedent's medical needs and/or mental status and provide appropriate medical care and treatment;

(m)     in consciously failing to take the appropriate steps to provide medical care and treatment to the Decedent when they had actual and constructive notice of the Decedent's medical condition (and that the Decedent's prescribed hypertension medication had run out);

(n)     in consciously failing to have the proper policy and procedures necessary to ensure that inmates are provided basic and/or appropriate medical care;

(o)     if said procedures do exist, in failing to follow same;

(p)     in consciously abandoning the Decedent when he was in desperate need for medical care;

(q)     in consciously failing to follow the mandates of OCDC's Policies and Procedures;

(r)      in consciously failing to follow the mandates of the <u>Minimum Standards for Local Detention Facilities in South Carolina</u>; and

(s)     in consciously failing to start and implement the appropriate life saving measures on August 11, 2012.

43.    As a direct and proximate result of the Defendants' acts of willful, malicious and deliberate indifference, jointly and severally and in combination thereof, the Decedent suffered deprivations of his rights secured by the Fourth, Eighth and Fourteenth Amendments to the <u>United States Constitution</u>.

44.    The Defendants, jointly, severally and in combination thereof, wrongfully caused the death of Tony Glen Tyler by their acts and omissions as described above.

45.    As a direct and proximate result of the omissions, willful and wanton conduct of the Defendants, the Plaintiff has been damaged and suffered as follows:

(a)     loss of financial economic support and contribution of the deceased;

(b)     extreme mental shock and suffering;

(c)     extreme wounded feelings;

(d)     tremendous grief and sorrow;

(e)     loss of friendship and companionship; and

(f)     deprivation of the use and comfort of the deceased's society, knowledge and judgment and experience.

46.     The Plaintiff is informed and believe that the Estate of Tony Glen Tyler is entitled to ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES against the Defendants, pursuant to the violation of their Federal Civil Rights 42 USC 1983 – Wrongful Death.

47.     As a result, the Decedent suffered conscious pain, suffering, indignity, and loss of his aforementioned federal rights. The Plaintiff has suffered the loss of the life of the Decedent, loss of his love and support, mental anguish, emotional distress, undue grief, and will likely suffer from the effects of the Defendants' actions now and in the future, and Plaintiff demands ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES from the Defendants.

WHEREFORE, the Plaintiff prays for judgment against the Defendants, both jointly, severely and in combination thereof, for ACTUAL, CONSEQUENTIAL, AND PUNITIVE DAMAGES, costs and reasonable attorney fees. The Plaintiff demands a trial by jury as provided for in the Seventh Amendment to the Constitution of the United States of America.

> __s/ C. Carter Elliott, Jr.____
> C. Carter Elliott, Jr.
> U.S.D.C. Bar #: 5423
> Elliott & Phelan, LLC
> 17 ½ Screven Street
> P.O. Box 1405
> Georgetown, SC  29442
> (843) 546-0650 (phone)
> (843) 546-1920 (fax)
> carter@elliottphelanlaw.com
>
> Clyde C. Dean, Jr.
> Dean Law Firm
> P.O. Box 1405
> Orangeburg, SC 29116

May 15, 2015
Georgetown, South Carolina